# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TRONIA SHADE,**

   **Petitioner,**

**v.**              **Civil Action No. 1:05cv163**
                  **Criminal Action No. 1:04cr79**
                  **(Judge Keeley)**

**UNITED STATES OF AMERICA,**

   **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

On December 19, 2005, the *pro se* petitioner, Tronia Shade, filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. Petitioner filed a Memorandum in Support on April 19, 2006 and an amended Memorandum on October 17, 2007. The United States filed a response to the petition on October 25, 2007. The petitioner has not filed a reply. This case is before the undersigned for a report and recommendation pursuant to Standing Order No. 4 and LR PL P 83.01, et seq.

## I. Procedural History

### A. Conviction and Sentence

On November 3, 2004, the petitioner was charged with one count of conspiracy to distribute in excess of 50 grams of cocaine base in violation of 21 U.S.C. §§ 845 and 841(b)(1)(A), two counts of distributing cocaine base within 1,000 feet of a playground in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 860, and aiding and abetting the distribution of cocaine base within 1,000 feet of a playground in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 860.

On January 6, 2005, the petitioner pleaded guilty to count two of the indictment, distribution of .10 grams of crack cocaine within 1,000 feet of a playground. On June 15, 2005, the petitioner was sentenced to 108 months imprisonment with credit for time served from December 8, 2004.

**B.  Direct Appeal**

The petitioner did not file a direct appeal of his conviction and sentence.

**C.  Federal Habeas Corpus**

Petitioners' Contentions

(1) Entrapment - the petitioner's conviction and sentence were a result of inducement by government to commit a crime absent predisposition of the defendant;

(2) Ineffective assistance of counsel for

    (a) failing to make the petitioner aware of his Fifth and Sixth Amendment rights,

    (b) failing to file an appeal,

    (c) failing to properly review all the evidence against the petitioner and question the credibility of government witnesses,

    (d) failing to investigate possibility of downward departure under Booker and Fan Fan cases,

    (e) failing to properly advise the petitioner as to his possible sentence;

(3) Illegal sentence; and

(4) The Court should have granted a downward departure under Booker and Fan Fan cases.

Government's Response

(1) The conviction and sentence were not the result of entrapment,

(2) The petitioner has failed to show that he requested counsel file an appeal.

(3) There is no basis for the petitioner's claim that his sentence is illegal.

(4) Counsel did move for a Booker and Fan Fan downward departure.

(5) Petitioner's argument that he was not properly advised as to his possible sentence is refuted by the record.

## II. Analysis

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

### A. Entrapment

In Matthews v. United States, 485 U.S. 58 (1988), the Supreme Court of the United States established a two-part test for use in establishing an affirmative defense of entrapment:1) whether the there was inducement on the part of the government; and 2) whether the defendant showed a predisposition to commit the crime. Id. at 63. The defendant has the initial burden of presenting more than a scintilla of evidence establishing these two elements. United States v. Perl, 584 F.2d 1316, 1321 (4th Cir. 1978).

The focus of the predisposition inquiry must be on whether the defendant possessed the necessary state of mind to commit the crime when he was initially approached. United States v. Hunt, 749 F.2d 1078, 1085 (4th Cir.1984). The government's knowledge of the state of mind is irrelevant, and thus there is no requirement that the government prove that it had a reasonable

suspicion of wrongdoing before conducting an undercover investigation. United States v. DeVore, 423 F.2d 1069, 1071 (4th Cir. 1970). Therefore, if the criminal intent originates in the mind of the accused and the criminal offense is completed, the fact that a person acting as a decoy for law enforcement officials furnished the accused with the opportunity for commission of the offense, or that the accused was aided in the commission of the crime in order to secure the evidence necessary to prosecute him, constitutes no defense. Sherman v. United States, 356 U.S. 369, 372 (1958). Hence, the entrapment defenses is not available where the officers merely afforded an opportunity to one intending to violate the law. Id.

Under the available record, there is no support for the petitioner's allegation of entrapment. In fact, the opposite is true; the record shows the petitioner, on his own accord, sold crack cocaine. First, the petitioner entered a guilty plea, thus admitting to committing all the elements of the underlying crime. McCarthy v. United States, 394 U.S. 459, 466 (1969). Second, pursuant to Federal Rules of Criminal Procedure Rule 11(b)(3), during the Rule 11 proceedings, the Court examined the factual basis for the plea. During the Rule 11 hearing, the Government called Detective Brian Purkey, who testified that he met with a confidential informant ("CI") who advised him that crack cocaine could be purchased from the petitioner. Plea transcript (dckt. 41) p. 42. Detective Purkey then made the controlled purchase utilizing the CI. Id. at 43. Detective Purkey also stated that with other witness testimony, 50 to 150 grams of crack cocaine could be attributed to the petitioner. Id. at 44. The petitioner failed to challenge any aspect of Detective Purkey's testimony. Hence, the record shows no factual basis for an entrapment defense and this claim should be denied.

**B. Ineffective Assistance of Counsel**

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

(1) Failing to Make Petitioner Aware of his Fifth and Sixth Amendment Rights

5

In this ground, the petitioner simply asserts that counsel failed to make him aware of his Fifth and Sixth Amendment rights. This claim is refuted by the record. During his Rule 11 hearing, petitioner, on his own accorded, entered a guilty plea (Plea transcript (dckt. 41) p.45). Additionally, petitioner stated that no party had coerced him into signing the plea agreement (Id. at 46-47) and that his counsel had adequately advised him about the plea agreement. (Id. at 50). Furthermore, even if counsel should have advised him of his Fifth and Sixth Amendment rights, any deficiency by counsel was cured by the Court at petitioner's arraignment and Rule 11 hearing. At his arraignment, the presiding magistrate judge informed the petitioner of his Fifth Amendment rights. Furthermore, petitioner was informed of his Sixth Amendment rights at the Rule 11 hearing.[1] Therefore, this claim is without merits and should be dismissed..

(2) Failing to File an Appeal

The Fourth Circuit Court of Appeals has held that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). In rendering this decision, the Court opined:

> Persons convicted in federal district courts have a right to a direct appeal. Coppedge v. United States, 369 U.S. 438, 82 S.Ct.917, 8 L.E.2d 21 (1962). In addition, the Sixth Amendment right to counsel extends to the direct appeal, Douglas v. California, 372 U.S. 353, 83 S.Ct. 917, 8 L.Ed.2d 811 (1963), and it obligates the attorney to file the appeal and identify possible issues for the court even if, in the

---

[1] The petitioner was asked by the court if he understood his rights that he was waiving. After the petitioner responded in the affirmative, the Court proceeded to review the rights, including the right to a jury trial and the right to confront witnesses. Again, after the review, the Court asked the petitioner if he understood; the petitioner again answered in the affirmative. See Plea transcript (dckt. 41) pp. 37-41.

6

attorney's opinion, those issues are not meritorious. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

Id. at 41.

Further, in Roe v. Flores-Ortega, 528 U.S. 470 (2000), the United States Supreme Court recognized that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Flores-Ortega, at 478.

Here, the petitioner doe not allege that he requested his counsel file an appeal. Instead, the petitioner's entire claim reads as follows:

> This would have left the fact that the defendant could also
> appeal the sentence that was imposed if the offense level that
> the court found would have been more that level 29 which
> is what the level was going to be at least one level higher that
> (sic) the plea agreement.
>
> [T]he [fact that] counsel once the sentence was imposed did not
> appeal the sentence was ineffective duu to the fact that
> it is stated in the plea agreement that if the offense level
> is above the level 29 then the defendant could appeal the
> sentence under 18 U.S.C. § 3742 (a)(2) seeing as how
> the final offense level was 30 then the counsel should
> have appealed to protect the defendant['s] rights.

See Memorandum of Law (dckt. 5) p. 3.

From this, it appears that the petitioner believes counsel should have automatically filed an appeal, simply because he was not barred from doing so by the waiver contained in the plea agreement. In his memorandum, the petitioner asserts that his plea agreement contained a waiver of appeal, only in the case where his offense level was determined to be 29 or less. See Memorandum of Law (dckt.

7

5) p. 3. The petitioner then seemingly argues that because his offense level was determined to be a 30, counsel had an obligation to file an appeal on his behalf. Id. However, the petitioner's argument is fatally flawed. Under Flores-Ortega, an attorney does not have an obligation to file an appeal simply because doing so is not barred by a waiver. Id. at 472. An attorney is only ineffective for not filing an appeal when an appeal was requested and the attorney failed to follow the express instructions of his client. Id.

(3) Failing to Review All Evidence and Question the Credibility of Government Witnesses

In this ground, the petitioner again merely makes a self-serving and conclusory claim that counsel failed to review all the evidence and question the credibility of the government's witnesses. Again, as in subsection (1), petitioner has failed to provide sufficient evidence that counsel's performance was deficient in this regard, or that even if it was, the outcome of the proceedings would have been different.

(4) Failing to Investigate Possibility of Downward Departure

As noted by the respondent, and as observed by the undersigned upon an exhaustive review of the transcript, the sentencing Judge discussed in great detail the impact of both Booker and Fan Fan on petitioner's sentence. See Plea transcript (dckt. 41) pp.63-68. In addition, at sentencing, counsel for the petitioner specifically requested a sentence outside the guidelines based on the Booker and Fan Fan cases. Id. at 72-82. After careful consideration of counsel's request, the Court denied any reductions in sentence pursuant to its discretion under Booker and Fan Fan. Id. at 93. Accordingly, based on the unquestioned facts, this claim that counsel failed to investigate the possibility of a downward departure is facually baseless and should be denied.

(5) Failing to Properly Advise Petitioner as to his Possible Sentence

8

As noted by the respondent, a claim of ineffective assistance of counsel for inaccurately predicting a sentence, should be rejected. See United States v. Foster, 68 F.3d 86-87-88 (4th Cir. 1995); United States v. Lambey, 974 F.2d 1389 (4th Cir. 1992). In this case, the petitioner's claim that he was not properly advised as to his possible sentence is refuted by the record.

Even if counsel should have conducted a more thorough review of petitioner's criminal history prior to advising him on the plea, petitioner's Rule 11 hearing cured any deficiency by counsel. In an attempt to establish prejudice, the petitioner asserts that had he known what his potential sentence would actually be, he would not have pleaded guilty. Nevertheless, "if the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant." United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992) (*en banc*), cert. denied, 513 U.S. 1060 (1994).[2] Moreover, misadvise regarding sentencing possibilities is not "but for" cause of a guilty plea so long as the plea was "based on risk information given ... by the sentencing court." United States v. Craig, 985 F.2d 175, 179-180 (4th Cir. 1993). In other words,

---

[2] As will be discussed more fully in this Order, the instant case is substantially similar to Lambey. During the plea negotiations in Lambey, counsel told Lambey that "he felt the case would fall into the sentencing range defined in levels 27 to 29 of the sentencing guidelines, providing for a sentence of somewhere between 70-108 months." United States v. Lambey, 974 F.3d at 1391 (internal quotations omitted). Counsel even gave Lambey a copy of a guidelines manual from which counsel had calculated Lambey's sentence. Id. at 1392. Lambey then signed the plea agreement, even though it provided that his sentence would be in the sole discretion of the sentencing judge and that any prediction was not binding on the court. Id. In reviewing Lambey's case, the Fourth Circuit noted that Lambey "has suggested no confusion about the nature of the charges, the defenses to them, or their applicability to his factual circumstances to satisfy a finding of guilt. Moreover, he suggests no error in the court's advice to him on what he could receive by way of a sentence. He contends simply that he believed he would receive a shorter sentence than that outlined by the court because of his discussions with his attorney that took place prior to the Rule 11 proceeding." Id. at 1394. The Fourth Circuit found Lambey's argument to be without merit because any misinformation given to Petitioner by counsel during the plea negotiations was corrected by the sentencing court at the Rule 11 hearing.

even if petitioner was initially misadvised by counsel of his potential sentence, no prejudice results if the Court properly informs the petitioner of his potential sentence at the Rule 11 hearing. United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995).

In this case, during the petitioner's Rule 11 hearing, at which his guilty plea was entered, the Court specifically informed the petitioner of the maximum penalties he faced:

> THE COURT: All right. I'm going to order the plea agreement filed. Okay. Mr. Shade, the maximum penalty to which you're exposed by this plea is twenty years. That doesn't mean that's what you're going to get; it means that I can't sentence you to any more than that. Again, we're talking a range here. You know you-it's based on drug weight and what we know from the plea agreement is that you're waiving up or giving up your right to plead guilty if your offense level, after acceptance of responsibility is a 29. Do you understand
>
> THE DEFENDANT: Yes ma'am

Transcript of Plea Hearing (dckt. 41) at 21-22.

Furthermore, during the Rule 11 hearing, the probation officer specifically pointed out that under the terms of the plea agreement, because the transaction occurred near a protected area, the maximum penalty may increase. After researching the potential increase, the following interaction occurred between the Court and the petitioner.

> THE COURT: Okay. Now is the plea that you've tendered here today the result of any promises other than what the Government has agreed to in the plea agreement?
>
> THE DEFENDANT: No ma'am.
>
> THE COURT: Has anybody predicted the exact sentence that you're going to do?
>
> THE DEFENDANT: Just a ballpark figure, ma'am.
>
> THE COURT: All right. Now you know that we've been looking at this additional guideline level issue?

> THE DEFENDANT: Yes ma'am.
>
> THE COURT: As a result of the playground and I've asked my Clerk to go and print out a case to give to everybody that she's found from the Fourth Circuit, and it's not good news for you Mr. Shade. It would indicated that this guideline that I read to you applies in your case.
>
> THE DEFENDANT: Meaning?
>
> THE COURT: An additional level or maybe two levels, I don't know.
>
> THE DEFENDANT: So will it be more than 29?
>
> THE COURT: It would be a 30 or a 31. And perhaps before I accept the plea here today, Ms. Pennington and Ms. Muncy, you all want to read that over and, Ms. Pennington, you might want to discuss that with Mr. Shade. I think that my Clerk made a copy for him too.

Transcript of Plea Hearing (dckt. 41) at 47-48.

After the petitioner had the opportunity to discuss the issue with counsel, the following exchange took place.

> THE COURT: ...But there again, none of this is guaranteed, Mr. Shade. This just goes to show you again how complicated these guidelines can get.
>
> THE DEFENDANT: Yes ma'am, I understand that.

Plea Hearing Transcript (dckt 41) at 49-50.

Hence, multiple times throughout the Rule 11 hearing, the petitioner was not only told about his possible sentence, but was given time to reflect on the increase of his sentence. Even if counsel's initial calculation of the petitioner's sentence was inaccurate, the court adequately explained the sentence possibilities during the petitioner's Rule 11 hearing, prior to the entry of the plea. Therefore, this claim should be denied.

11

**C. Illegal Sentence**

The petitioner contends that his sentence should be readjusted to the actual amount of crack purchased at the time of his arrest. U.S.S.G.§ 1B1.3(a)(2) provides that a base offense level shall be determined on the basis of "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." The "background" contained in the explanatory commentary following 1B1.3(a)(2) further provides in relevant part that "in drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." During sentencing, the Court can consider evidence of other drug possession when the government has established the drug amounts by a preponderance of the evidence and the conduct is relevant to the offense of conviction. United States v. Cook, 76 F.3d 596, 604-05 (4th Cir. 1996), *cert. denied,* 519 U.S. 939 (1996). The Government can meet its burden by (1) a defendant's acknowledgment during the Rule 11 colloquy or sentencing proceedings that the amount set forth in the indictment or alleged by the Government is correct; (2) when a defendant, without reserving his right to challenge the amount for sentencing purposes, pleads guilty to an indictment that attributes a specific quantity of drugs to the defendant; (3) by a stipulation of the parties that the court determines to have a reasonable factual basis; (4) the defendant's failure to properly object to a recommended finding in a presentence report that the court determines to be reliable; or (5) presenting evidence that the court deems sufficient to establish the quantity of drugs attributable to a defendant. United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993). The Fourth Circuit Court of Appeals has held that "because the quantity of drugs goes to the question of sentence rather than guilt, the government need only prove the quantity by a

preponderance of the evidence." United States v. Engleman, 916 F.2d 182, 184 (4th Cir. 1990).

At petitioner's Rule 11 hearing, the amount of relevant conduct was extensively discussed. During the recitation of the plea agreement, the government covered all relevant conduct, including all relevant previous crack cocaine purchases. Furthermore, the Court discussed the quantity of drugs with the petitioner in its review of the plea agreement.[3] Moreover, the government's witness, Detective Purkey, testified that the investigation of the petitioner could attribute 50 to 150 grams of crack cocaine to the petitioner. That testimony went unchallenged. Instead, the petitioner admitted that he understood the plea agreement ,that he understood the Court and that he had no quarrels with Detective Purkey's testimony.[4] Hence, any perceived illegality of the sentence was

---

[3] In petitioner's plea agreement, Section IV, Part D reads as follows:

> In support of these recommendations, the following facts are relevant to sentencing, and these facts are admitted as being true by the defendant and the United States:
>
> 1. On August 8, 2002, the defendant distributed .1 gram of crack to an informant working in the Harrison County Narcotics Task Force in exchange for $50.00. This occurred at 252 Haymond Highway, Clarksburg and in the Northern District of West Virginia. This location is within 1,000 feet of the Harrison Street Playground/Park. *The government and the defendant further stipulate and agree that the relevant conduct of the defendant would place him at a guideline level of 50-150 grams of crack or the equivalent of that guideline.* (Emphasis added)

Plea Agreement (dckt. 21) at p 4.

[4] After the Detective Purkey had the opportunity to testify, the following exchange took place between the Court and the petitioner:

> THE COURT: All right. Mr. Shade, you have a right to add to or correct the testimony of Mr. Purkey if you believe it's wrong. Do you wish to change–or not change? Do you wish to challenge

adequately handled at the Rule 11 hearing by the Court and no basis exists for this argument.

**D. Downward Departure Under Booker and Fan Fan Cases**

In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In June of 2004, the Supreme Court applied this ruling to the State of Washington's sentencing scheme and found that the imposition of state sentencing enhancements - based solely on factual findings by the court - violated a defendant's Sixth Amendment rights because the facts supporting the findings were neither admitted by the defendant nor found by a jury. See Blakely v. Washington, 542 U.S. 296, 301-303 (2004). In addition, the Court expressly noted that it was not considering the constitutionality of the federal sentencing guidelines. Id. at 305, n 9. Subsequently, however, the Supreme Court took up this issue in United States v. Booker, 543 U.S. 220 (2005).

In Booker, the Supreme Court held that Blakely applies to the federal sentencing guidelines, and therefore, the Sixth Amendment is violated when a district court imposes a mandatory sentence under the Guidelines that is greater than the maximum authorized by the facts found by the jury alone. Booker, 543 U.S. at 243. Additionally, the Court held that two provisions of the statute creating the guidelines system must be excised to make them compatible with the Sixth Amendment, thereby rendering the guidelines advisory. Id. at 258-261.

In the present case, the sentence imposed by the Court was less than the statutory maximum,

---

any aspect of it?

THE DEFENDANT: No ma'am.

Plea Hearing Transcript (dckt 41) at 45.

hence both Blakely and Booker do not apply. Regardless, the petitioner's allegation that the Court did not consider additional factors other than the Sentencing Guidelines in rendering his sentencing is clearly refuted by the record. As previously noted, at sentencing, petitioner's counsel made a lengthy and passionate plea for a sentence outside the guidelines. See Plea transcript (dckt. 41) pp. 72-81. Additionally, the following interaction occurred between the court and the petitioner:

> THE COURT: Now since January there's been a new aspect to Federal Guidelines sentencing that has been added to this statutory protocol and that is that the Court is to look at additional factors under 18 U.S.C. § 3553(a) and I'm sure Mr. Shade knows the name of the case that set that up; it's United States v. Booker, and I would assume, Mr. Shade, that you and Mr. Dyer[5] talked about this.
>
> THE DEFENDANT: Yes ma'am.

Plea Hearing Transcript (dckt.41) at 63.

Following this exchange, the court spends the next five pages of the transcript reviewing Booker's impact on the petitioner's case; the court examined the seriousness of the offense and the public's protection from further crimes. Additionally, the court examined petitioner's specific characteristics, including his age, health and community reputation before denying any reductions. Hence, during sentencing, Booker factors, along with additional factors, were considered. Therefore, petitioner's assertion that Booker was not considered is misguided and petitioner's claim should be denied.

## III. Recommendation

For the reasons set forth herein, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's § 2255 motion and **DISMISSING** this case with prejudice.

---

[5]On March 17, 2005, after petitioner's Rule 11 hearing, the Court, pursuant to a request by the petitioner, ordered the substitution of counsel from Ms. Pennington to Mr. Dyer. See. Order (dckt. 23)

Within ten (10) days after being served with a copy of this Opinion/Recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: May 29, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE